UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

| | |
|---|---|
| State of Minnesota, by and through its Attorney General Keith Ellison, and Shireen Gandhi, in her official capacity as the Commissioner of the Minnesota Department of Human Services,<br><br>    Plaintiffs,<br><br> vs.<br><br>Dr. Mehmet Oz, in his official capacity as Administrator for the Centers for Medicare and Medicaid Services; the Centers for Medicare and Medicaid Services; Robert F. Kennedy, Jr., in his official capacity as Secretary of the U.S. Department of Health and Human Services; U.S. Department of Health and Human Services,<br><br>    Defendants. | Case No.<br><br>SUPPLEMENTAL DECLARATION OF PATRICK HULTMAN |

I, Patrick Hultman, hereby declare as follows:

1. I am the Deputy Medicaid Director at the Minnesota Department of Human Services. I have personal knowledge of the facts in this Declaration.

2. On February 25, 2026, CMS served Minnesota with a sweeping Notice of Deferral (the "Deferral"), the effect of which immediately denies the state approximately $259M by reducing the State's federal funds account by that amount. Minnesota has received many deferral notices over the years, but this one is unlike any of those. Most

notably, the deferral is much larger than any past deferral—more than fifteen times the amount of any I can recall Minnesota has ever received in the past. The largest prior quarterly deferral Minnesota has seen is $10,966,609.

3. The Deferral[1] is remarkable in a number of additional ways. Medicaid records related to the 14 high-risk services were only recently requested and provided to CMS and they have told us that they have not yet had time to review and understand the information that has been provided. The Deferral states that more information is needed from the state, but CMS has told us that it has not been able to review what has been provided.

4. The Deferral lacks specificity. Typically, a "variance" or a suggestion of "aberrant" billing practices based on data analytics would be a cause for CMS to conduct a review or audit—not the basis for a sweeping and overbroad deferral.

5. Deferral is a narrow auditing tool that focuses on whether there is documentary support for claims or parts of claims. Deferrals are not meant to function as a means to withhold funding for entire program areas for which there are only generalized concerns. It would be more common for CMS to issue a narrower deferral based on a well-defined set of expenditures. In my experience, CMS has never jumped so quickly to a deferral, depriving Minnesota of Medicaid dollars while it reviews

---

[1] The Department does not concede that any part of the Deferral Notice is appropriate or warranted, but my comments in this Declaration will focus on the approximately $243M that is being withheld for the fourteen service areas that Minnesota has determined are "high-risk."

information already in its possession to see whether any claims are actually problematic, which it seems like CMS has not even done.

6. Historically, if CMS had concerns with claims documentation or a State's compliance with applicable Medicaid statutes or regulations, it would communicate with the state and work with it informally to cure any deficiencies—a collaborative process that may take months or even years.

7. Another problem is that Minnesota now has 60 days to provide information that CMS claims is missing to CMS, but because of the breadth of the Deferral, the lack of specificity about what claims are at issue, and the absence of detail about what problems exists with those claims, Minnesota is not certain of what information CMS needs to determine the allowability of the claims.[2] I am concerned about Minnesota's ability to provide supporting documentation within 60 days, given these issues with the Notice.

8. I am also concerned that CMS will drag its feet in resolving this Deferral and reimbursing the state. CMS often takes a long time to evaluate information and resolve claims. Although, in theory, CMS has only 90 days to decide whether to pay a claim, CMS regularly evades the 90-day deadline by claiming that the state's submissions are insufficient or by demanding additional information so that the 90-day deadline never begins.

---

[2] Minnesota has not been told, for example, the identity of the "specific providers" whose billing is "aberrant," or what CMS's data analysis related to that billing showed.

9. Minnesota will not be able to effectively challenge these improper and arbitrary withholdings in federal court for many months, or even years. If federal financial participation is not available until the administrative process is complete, CMS would already have withheld—as it has already promised to do—several hundred million, or billions of dollars in quarterly deferrals.

## SUPPLEMENT

10. Since filing the Complaint and Motion for a Temporary Restraining Order on March 2, 2026, three things of note have occurred that relate to this case. First, on Wednesday, March 4, 2026, CMS provided Minnesota with a document request asking for "a sample of 330 claims from the Fee-For-Service data" needed to "continue to determine the allowability of claims for [Q4 2025.]" A true and correct copy of the document request is attached as Exhibit #1 to this supplemental declaration.

11. Second, on March 11, 2026, CMS provided Minnesota with a document request asking for "a sample of 160 claims from the managed care data" needed to "continue to determine the allowability of claims for [Q4 2025.]" A true and correct copy of the document request is attached as Exhibit #2 to this supplemental declaration.

12. Also, the Requests demand documents by March 20, 2026 and March 26, 2026, respectively, which are not deadlines under the deferral regulations. Pursuant to 42 C.F.R. § 430.40(c), Minnesota has sixty days to provide documents, which deadline is April 27, 2026.

13. The third thing that happened since March 2nd is that, on March 10, 2026, I attended a regularly scheduled meeting between Minnesota Department of Human

Services and CMS representatives and again asked them to provide feedback on Minnesota's Corrective Action Plan submitted on January 30, 2026. CMS said that it had no information for Minnesota about the proposed Corrective Action Plan, and that CMS could not commit that it would *ever* provide Minnesota with feedback on the Corrective Action Plan. The CMS representatives nonetheless told me that CMS expected Minnesota to continue to implement the plan. CMS also informed us that, effective immediately, it would be meeting less frequently with Minnesota.

I declare under penalty of perjury that everything I have stated in this document is true and correct.

Executed on: March 11, 2026
Ramsey County
State of Minnesota

*Patrick Hultman*
Patrick Hultman