UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

| | |
|---|---|
| State of Minnesota, by and through its Attorney General Keith Ellison, and Shireen Gandhi, in her official capacity as the Commissioner of the Minnesota Department of Human Services,<br><br>        Plaintiffs,<br><br>    vs.<br><br>Dr. Mehmet Oz, in his official capacity as Administrator for the Centers for Medicare and Medicaid Services; the Centers for Medicare and Medicaid Services; Robert F. Kennedy, Jr., in his official capacity as Secretary of the U.S. Department of Health and Human Services; U.S. Department of Health and Human Services,<br><br>        Defendants. | Civil No. 26-CV-1701-ECT/DTS<br><br><br>**PLAINTIFFS' SUPPLEMENTAL MEMORANDUM IN SUPPORT OF THEIR MOTION FOR A TEMPORARY RESTRAINING ORDER** |

**INTRODUCTION**

In announcing the $259 million of deferred Medicaid payments to Minnesota, CMS Administrator Oz promised that CMS "will give [Minnesota] the [deferred] money . . . after they propose and act on a comprehensive, corrective action plan to solve the problem."[1]  Administrator's Oz's prerequisite for the release of the deferred funds is now complete.  CMS approved the State's revised Corrective Action Plan ("CAP") on March 19 and noted the State had already met the CAP's first two milestones.  Plaintiffs expected

---

[1] Timestamp 11:32, https://www.youtube.com/watch?v=mRJN72K2lYw.

Administrator Oz to honor his commitment and immediately withdraw the deferral.  But Defendants have made clear that contrary to Administrator Oz's commitment, CMS has no intention of withdrawing the deferral.  This strategy of moving the goalposts is of a piece with CMS's actions against Minnesota, confirms the arbitrary and capricious nature of the deferral action, and underscores the need for a preliminary injunction.

## RELEVANT FACTUAL BACKGROUND

Minnesota submitted to CMS a revised CAP on January 30, 2026.  ECF No. 6, ¶ 16; ECF No. 5-1, Ex. 5.  At the TRO hearing, the Court pushed CMS about its refusal to provide feedback on the CAP.  *E.g.*, Tr. 38–40.  Then, on March 17, Deputy CMS Administrator Kimberly Brandt faced tough questioning by members of the House Subcommittee on Oversight and Investigations related to CMS's actions against Minnesota, including questions about CMS's review of Minnesota's initial CAP.[2]

After seven weeks of radio silence, CMS informed State officials that it approved the revised CAP and acknowledged Minnesota was meeting the CAP's milestones. ECF No. 32, at 3–4.  As to the State's pending appeal of CMS's January 6 notice of noncompliance, Brandt stated that CMS would request that "the hearing be stayed pending complete implementation of the approved CAP, as successful completion would moot the appeal." ECF No. 32, at 4.

Believing Administrator Oz would honor his commitment to release the deferred Medicaid funding now that CMS has approved the State's revised CAP, Plaintiffs asked

---

[2]  https://www.youtube.com/watch?v=EiK_j01ena0  (testimony beginning around 30-minute mark).

Defendants to confirm that CMS will immediately withdraw the deferral.   At the March 24 status conference, Defendants stated CMS did not intend to withdraw the deferral, reiterating its position that Administrator Oz's statements should not be relied upon.

## ARGUMENT

**I.    CMS'S DECISION TO PROCEED WITH THE DEFERRAL DESPITE ADMINISTRATOR OZ'S PROMISES TO THE CONTRARY UNDERSCORES ITS ARBITRARY NATURE.**

Plaintiffs have always maintained that conditioning a deferral on an adequate CAP is improper, and that by doing so Defendants evidenced their intent to deliver immediate "reckoning and retribution" on Minnesota rather than permit the State to defend itself in the compliance action before withholding Medicaid funding.  *E.g.*, ECF No. 4, at 1–2, 22, 24, 28–30.  Nevertheless, Defendants have never disputed that Administrator Oz told the State it would receive its deferred Medicaid funding once CMS accepted a CAP from the State.  Nor have they ever claimed that Administrator Oz misspoke or misunderstood the deferral (or offered a declaration from the Administrator to that effect).  Instead, Defendants ask the Court to turn a blind eye to anything Administrator Oz says, chalking up his comments as merely "political rhetoric."

But Administrator Oz is not a random politician with a tangential connection to this case.[3]  He is the head of CMS.[4]  He is the final decision maker in this deferral action.  *See*

---

[3] Notably, Administrator Oz signed the January 6 letter notifying Minnesota that CMS believed the state was not in compliance with federal Medicaid law and that it intended to withhold over $500 million quarterly from the State.  ECF No. 5-1, at 13–18.  Further, in her testimony before Congress, Brandt stated that she and Administrator Oz visited Minnesota in January 2026 to meet with the State about what CMS wanted in a revised CAP.  *See* https://www.youtube.com/watch?v=EiK_j01ena0 (56:50 mark).

[4] Defendants' claim that an agency head's statements should be ignored as political statements rings hollow given CMS's reliance on public statements and actions by political

42 C.F.R. § 430.40(e)(1) ("The Administrator or current Designee gives the State written notice of his or her decision to pay or disallow a deferred claim."). If the deferral leads to a disallowance, he decides whether the disallowance should be upheld. 42 C.F.R. § 430.42(c)(1) and (2) ("After consideration of the policies and factual matters pertinent to the issues in question, the Administrator shall . . . issue a written decision or a request for additional information").[5] There is no reason why the Court should ignore Administrator Oz's statements about the nature of the deferral (including how it can be lifted) simply because he is a "political" figure, and Defendants cite no authority to that effect.[6] *See* Fed. R. Evid. 801(d)(2)(A) (governing party admissions); *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981) (holding that at a preliminary injunction, a party "is not required to prove his case in full" and that such motions are "customarily granted on the basis of . . . evidence that is less complete than in a trial on the merits"); *Storage Concepts, Inc. v. Incontro Holdings, LLC*, No. 8:20-cv-447, 2021 WL 1789205, at *9–10 (D. Neb. May 5, 2021) (considering and giving weight to statements at the preliminary injunction stage that may

---

leaders in Minnesota. Even the Court referred to "very public statements" by Governor Walz and other political leaders on the level of fraud in the State. Tr., at 12.

[5] Likewise, Dr. Oz is the final decisionmaker in the compliance action. 42 C.F.R. § 430.35(a)(1) ("CMS withholds payments to the State, in whole or in part, only if . . . the Administrator finds . . . "[t]hat the plan no longer complies with the provisions of section 1902 of the Act; or . . . [t]hat in the administration of the plan there is failure to comply substantially with any of those provisions.").

[6] Rather, Defendants seem to be asking the Court to suppress the Administrator's political speech. *See Missourians for Fiscal Accountability v. Klahr*, 892 F.3d 944, 948 (8th Cir. 2018) ("Because political speech is an essential mechanism of democracy, the means to hold officials accountable to the people, a precondition of enlightened self-government and a necessary means to protect it, political speech must prevail against laws that would suppress it, whether by design or inadvertence.").

ultimately be inadmissible at trial).   In fact, the only case referenced by Defendants *supports* Plaintiffs' argument.

That Defendants now ask this Court to ignore Administrator Oz's statements emphasizes the unreasonable position in which the State finds itself and brings this matter directly within the scope of *Department of Commerce v. New York*, 588 U.S. 752 (2019). There, the Supreme Court held that an agency action was arbitrary and capricious because the stated basis for the agency's action was incongruent with what the record revealed about the agency's priorities and decision-making process.  *Id.* at 781–85.  Specifically, the Court found that the stated reason for the agency's decision to add a citizenship question to the census (that is, to enforce the Voting Rights Act) seemed to be contrived to act as a pretext for the agency's true priorities, referencing numerous statements by the Commerce Secretary.  *Id.*   The Court emphasized the importance of agencies offering "genuine justifications for important decisions":

> The reasoned explanation requirement of administrative law, after all, is meant to ensure that agencies offer genuine justifications for important decisions, reasons that can be scrutinized by courts and the interested public. Accepting contrived reasons would defeat the purpose of the enterprise. If judicial review is to be more than an empty ritual, it must demand something better than the explanation offered for the action taken in this case.

*Id.* at 785.[7]  Here, too, CMS's claimed need for documentation (i.e., what it now states is the basis for the deferral) appears to be a pretext to accomplish what Administrator Oz said

---

[7] Defendants' attempt to distinguish *Commerce* based on the lack of an administrative file falls flat when (1) CMS has not produced an administrative file in this case or in the compliance action, ECF No. 5, ¶ 6, (2) we are at the preliminary injunction stage where no discovery is yet permitted, and (3) there is direct, uncontroverted evidence of Administrator Oz's position.

was the purpose of the deferral: to propose and act on a CAP.  This pretext is further exemplified by the lack of specificity in the notice; CMS's refusal to identify the "questionable variances" referenced in its notice, the "specific providers" CMS identified as "high-risk for fraud," and the "aberrant billing practices" that led to the deferral; CMS's use of sampling; and CMS's recent document requests which appear to be *looking for* a problem rather than to confirm documentation supports a claim.  *See* ECF No. 4, at 31–32. The court correctly questioned the genuineness of CMS's actions by asking counsel to provide a single item that CMS believed should be in the CAP that was not there, which counsel could not do.  Tr., at 38–43.

That Defendants now attempt to distance this deferral from Administrator Oz's statements underscores the arbitrary and capricious nature of this action.  Administrator Oz has a direct role in this matter, and the contradictory statements of Administrator Oz and CMS provide the State with little clarity on how it gets out from under the deferral.  This lack of clarity is quintessential arbitrary conduct by CMS.  *FCC v. Prometheus Radio Project*, 592 U.S. 414, 423 (2021) (stating an agency action is arbitrary and capricious when it is not "reasonable and reasonably explained").  A preliminary injunction is necessary to curb the Defendants' improper conduct.[8]

---

[8] Even if the Court believes that Defendants' actions are not arbitrary and capricious, contrary to law, or without observance of procedure because Defendants distanced themselves from Administrator Oz's statements, Plaintiffs continue to rely on their remaining arguments for why a preliminary injunction is appropriate.

**II.   IF THE COURT DOES NOT ENJOIN THIS DEFERRAL PROCESS, IT SHOULD AT LEAST REQUIRE CMS TO ARTICULATE A CLEAR, DISCRETE LIST OF DOCUMENTS FOR THE STATE TO PROVIDE.**

While the State believed the compliance matter was legally deficient[9] and a weaponization of the Medicaid program, ECF No. 5-1, at 20–22, it was nevertheless engaged in the administrative appeal process. But now that CMS approved the CAP and is purportedly abandoning its compliance action, the Agency now avoids its responsibility to produce an administrative record, respond to the State's discovery, and prove at a contested hearing why it believed the State was not compliant.

These actions, when viewed in the context of the present case, are troubling. Rather than engaging in a contested administrative process, CMS has chosen to continue this deferral, which allows it to hold hundreds of millions of dollars without producing an administrative record, without oversight, and without any formal hearing. It also permits CMS to draw out the deferral at its own discretion. *See* 42 C.F.R. § 430.40(c)(3), (5) (stating that CMS can continue to seek "additional information" from the State and that its 90 days to decide only runs "after all documentation is available in readily reviewable form"). This is strategic gamesmanship—CMS has traded a process that offers the State due process for one in which it holds near-unilateral discretion to defer the State's funding indefinitely. And unfortunately, it is unsurprising given CMS's conduct thus far.

---

[9] In its letter appealing the notice of noncompliance, the State emphasized, among other things, that CMS had approved the State plan it was now calling noncompliant, and that "CMS admits it has conducted no recent audit to support its Notice" but was instead relying on out-of-date reports. ECF No. 5-1, at 20.

7

For example, in CMS's December 5 letter, it claimed the steps Minnesota took to combat fraud were "insufficient" and "urge[d]" Minnesota to take several actions, including imposing a six-month enrollment moratorium for high-risk providers, enacting off-cycle revalidation for provider enrollments, and developing a CAP. ECF No. 5-1, at 8–9. CMS also stated it expected the State to meet with CMS weekly. *Id.* While Minnesota disagreed its actions were "insufficient," it agreed to address all steps CMS urged Minnesota to take, and it submitted a CAP addressing CMS's purported issues (and more). ECF No. 6, ¶ 8; ECF No. 5-1, at 56–59.

Unexpectedly, Administrator Oz moved the goalposts on January 6 and informed the State its CAP was "deficient" because it failed to include topics that were never requested by, or discussed with, CMS. ECF No. 6, ¶ 12. For example, he found the CAP deficient because "nothing in the CAP . . . would result in the State being able to understand ownership or corporate structure of providers and how the State will work with law enforcement to assure that no Medicaid funds are used to support criminal international entities," because the CAP did not include anything about "how artificial intelligence and other modern automated methods will be used to address the rampant fraud in the program," and because the CAP did not explain how the State "plans to enhance oversight of its managed care plans"—just to name a few. ECF No. 5-1, at 15–17.

Minnesota nonetheless complied and submitted a revised CAP by CMS's January 30 deadline. But despite CMS previously stating it expected the State to meet weekly and that its representatives "will participate and are ready to provide appropriate technical assistance," *id.* at 8, CMS refused to provide any feedback on the revised CAP and met

8

with Minnesota less frequently.  ECF No. 6, ¶ 16; ECF No. 25, ¶ 13.  It was not until CMS received significant pushback for its lack of feedback that CMS approved the revised CAP. What is more, CMS confusingly indicated that one of the revised CAP's "most critical initiatives" was off-cycle provider revalidations of the high-risk provider types, ECF No. 32, at 3, yet this "critical" action was part of the State's original CAP that CMS deemed "deficient."

Defendants are now moving the goalposts again by attempting to withhold significant Medicaid dollars without a hearing or without producing a record.  While Plaintiffs believe this Court can grant their motion on numerous bases (including the arbitrary and capacious nature of the deferral and the lack of specificity in the notice), the Court should, at a minimum, require that CMS articulate a clear, unambiguous, reasonable, and discrete list of documents that the State needs to start the 90-day clock.  Without that, there is nothing to stop CMS from claiming it needs more information from the State and deferring indefinitely the funds to which the State is legally entitled.

**III.   CMS'S LETTER CONFIRMS IT WILL NOT BE HARMED BY A PRELIMINARY INJUNCTION.**

CMS's request to stay the hearing in the compliance matter shows it is in no rush to obtain the $500 million in Medicaid funding at issue in that case.  Given this action encompasses funding for the same programs, CMS likewise should suffer no harm if the preliminary injunction is granted.

## CONCLUSION

Based on the foregoing and the reasons identified in Plaintiffs' prior arguments, Plaintiffs' motion should be granted.

Dated:  March 27, 2026

KEITH ELLISON
Attorney General
State of Minnesota

**s/ Brandon Boese**
NATE BRENNAMAN
Assistant Attorney General
Atty. Reg. No. 0331776

SCOTT H. IKEDA
Assistant Attorney General
Atty. Reg. No. 0386771

BRANDON BOESE
Assistant Attorney General
Atty. Reg. No. 0396385

EMILY DOYLE
Assistant Attorney General
Atty. Reg. No. 0403550

445 Minnesota Street, Suite 600
St. Paul, Minnesota 55101-2125
(651) 757-1112 (Voice)
(651) 282-5832 (Fax)
Nate.Brennaman@ag.state.mn.us
scott.ikeda@ag.state.mn.us
brandon.boese@ag.state.mn.us
Emily.Doyle@ag.state.mn.us

*Attorneys For Plaintiffs*

|#6328989-v2