UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

| | |
|---|---|
| State of Minnesota, by and through its Attorney General Keith Ellison, and Shireen Gandhi, in her official capacity as the Commissioner of the Minnesota Department of Human Services, | Civil No. 26-CV-1701-ECT/DTS |
| Plaintiffs, | **PLAINTIFFS' MEMORANDUM IN RESPONSE TO DEFENDANTS' SUPPLEMENTAL BRIEF (ECF NO. 38)** |
| vs. | |
| Dr. Mehmet Oz, in his official capacity as Administrator for the Centers for Medicare and Medicaid Services; the Centers for Medicare and Medicaid Services; Robert F. Kennedy, Jr., in his official capacity as Secretary of the U.S. Department of Health and Human Services; U.S. Department of Health and Human Services, | |
| Defendants. | |

**INTRODUCTION**

At the March 24 conference, Defendants requested leave to file a supplemental brief to discuss two "subsequent events": (1) that Minnesota purportedly requested an extension to produce information related to the deferral which, according to Defendants, showed there was no emergency requiring preliminary injunctive relief; and (2) that State officials had positive meetings with CMS on March 5, 12, and 19. Defendants' supplemental brief, however, makes evident that the first "event" is inaccurate and nonetheless irrelevant—indeed, Defendants' supplemental brief hardly mentions it. And the second "event," while accurate, is immaterial.

Rather than focus on the two points it told the Court it wished to brief, Defendants' supplemental brief and declaration primarily contain information that Defendants apparently regretted not including in their opposition to Plaintiffs' motion. But even if the Court were to consider this late attempt to supplement the record,[1] nothing changes the arbitrary and retributive nature of this deferral. Indeed, the "subsequent events" since the deferral support Plaintiffs' request for emergency relief.

## ARGUMENT

### I. MINNESOTA'S PURPORTED REQUEST FOR AN EXTENSION, AND MEETINGS WITH CMS, ARE NOT REASONS TO DENY PLAINTIFFS' MOTION.

Despite telling the Court that Minnesota had requested an extension to respond to CMS's document requests, the declaration Defendants actually submitted confirms that statement is inaccurate. ECF No. 38-1, ¶ 9 (stating that DHS advised CMS that it "*anticipates*" requesting an extension but has not done so yet (emphasis added)).

Minnesota may very well need to request an extension because the CMS Notice of Deferral did not identify the documents needed to lift the deferral and Minnesota was therefore incapable of responding without more input from CMS. Minnesota has been diligently attempting to determine what information will satisfy CMS, but it has not obtained assurance from CMS that the information Minnesota is gathering will be all that

---

[1] The Court should strike paragraphs 4 through 8 and 13 from Director Howe's declaration, and any related argument in Defendants' supplemental brief, as the information in those paragraphs existed at the time Defendants submitted their TRO opposition brief. *See* D. Minn. L.R. 7.1(c), (d) (providing no sur-reply for party opposing a motion for emergency injunctive relief); *see also* L.R. 7.1(i) (prohibiting unsolicited memoranda of law).

is required to lift the deferral.  Second Declaration of Patrick Hultman ("2d Hultman Decl."), ¶ 3.

The State's good-faith efforts to mitigate the impact of a crippling federal deferral is not a basis to deny injunctive relief.  The amount of money at stake "is a lot of money for a State the size of Minnesota," and, according to the State's Medicaid Director, funding delayed for a protracted period would force the State to make cuts to Medicaid services. ECF No. 6, ¶ 18; *see also* ECF No. 8, ¶ 2 (State Budget Director stating that the loss of $240 million "would require MMB and DHS to identify potential cuts to services absent a legislative appropriation that covers this shortfall"); ECF No. 24, at 12–13 (describing impact on amicus curiae).  Given this impact, the State must pursue all avenues to address the deferral simultaneously, including both this litigation and meeting CMS's continuing demands.

Now that CMS has begun requesting information not specified in the Deferral Notice, a request for an extension may be unavoidable because of the delay by CMS to provide specific document requests to Minnesota, after the issuance of the Notice of Deferral, and because much of the sampling data requested by CMS is not in the State's possession and must be obtained from service providers and managed care organizations. 2d Hultman Decl., ¶ 2.  As much as Minnesota would like to collect and produce the information immediately, the timing is not entirely within Minnesota's control.  *Id.*

The same is true for the post-deferral meetings between Minnesota Department of Human Services representatives and CMS.  Minnesota is taking every step necessary to ensure the significant harm already imposed by the federal government does not continue

indefinitely.   Also, CMS's reference to "continuous discussions," ECF No. 38, at 2, overstates the case and attempts to mask the reality that CMS's deferral is unwarranted and punitive.   Minnesota has answered CMS's questions and has provided information, but Minnesota still has not been told by CMS why it is continuing to defer certain funds or what additional information must be provided that would be sufficient for the deferral to be lifted.[2]  2d Hultman Decl., ¶ 3.

## II.   THIS DEFERRAL IS NOT "REGULAR."

CMS asks this Court to ignore the extraordinary nature of the federal government's action, insisting that the deferral is "regular."  But even CMS admitted at hearing that what is happening is "unprecedented."  Transcript of March 12, 2026, Hearing, at 38 ("If Your Honor's asking me if this unprecedented, I would readily admit to you that it is.").[3]

Defendants oddly claim that the State is conflating two processes: the retroactive deferral and the prospective compliance action.  But CMS's attorney confirmed at hearing that the two actions targeted the same time-period, Medicaid services, and conduct of Minnesota. *Id.* at 37:13–:17.  Moreover, it was Defendant Oz that tied DHS's *future* actions to whether the deferred money is ever released, and said that Minnesota could see

---

[2] Minnesota does not plan to respond to Defendants' improper sur-reply argument regarding final agency action, which was fully briefed and discussed extensively at oral argument.

[3] To the extent Defendants are now attempting to walk back this admission by citing to deferrals in other states, the Court should reject that notion.  Comparing the amount of a deferral in Minnesota to one in New York or California is a nonstarter.  California's federal share of Medicaid spending is over nine times that of Minnesota's, and New York's is over five times that of Minnesota's. *See* Federal and State Share of Medicaid Spending, KFF, https://perma.cc/KK8E-3YPM.

additional quarter-billion-dollar deferrals if it did not submit a corrective action plan.  ECF No. 4, at 29.  Understandably, CMS has tried to distance itself from its own Administrator's statements.[4]   But "saying one thing and doing another" has become the federal government's pattern and practice, and Minnesota is left to guess what it must make of CMS's inconsistencies and misstatements:

| Topic: | Defendants' Original Position: | Defendants' Changed Position: |
|---|---|---|
| On how to lift the deferral | Defendant Oz said Minnesota would receive the deferred funding once it had an adequate CAP:<br><br>"[W]e will give them the money, but we're going to hold it and only release it after they propose and act on a comprehensive corrective action plan to solve the problem."[5] | Defendants now argue the deferral has nothing to do with a CAP:<br><br>"[T]he agency action is the deferral notice, not the press conference. . . . [The notice] says nothing about corrective action plans, and conditions release on documentation."[6] |
| On the adequacy of Minnesota's CAP | On February 25, 2026, Defendant Oz stated that Minnesota had failed to "propose and act on a comprehensive corrective action plan to solve the problem" evidencing that Minnesota was not "tak[ing] this seriously."[7] | In fact, on February 25, 2026, CMS had been in possession of Minnesota's revised CAP since January 30.  CMS then accepted the CAP, *without revision and as written*, on March 19, 2026.[8] |

---

[4] CMS trying to now distance itself from Administrator Oz's statements underscores the arbitrary and capricious nature of this action.  ECF No. 36, at 6.

[5] The White House, *Vice President Vance and Administrator Oz Announce Actions to Address Fraud, Waste, and Abuse*, at 11:35 (YouTube, Feb. 25, 2026), https://www.youtube.com/watch?v=mRJN72K2lYw   [hereinafter   Deferral   Press Conference].

[6] ECF No. 22, at 27.

[7] Deferral Press Conference, at 11:35, 12:19.

[8] ECF No. 32.

| On the purpose of the deferral | Dr. Oz said the deferral was about the State taking fraud seriously: "This quarter-billion-dollar deferment is hopefully going to get on the radar screen for the State of Minnesota," and should cause Governor Walz to "take [fraud] seriously."[9] | Defendants now claim the deferral is related only to CMS's need for additional accounting documentation.[10] |
|---|---|---|
| On the status of the compliance action | CMS Deputy Administrator Kimberly Brandt testified on March 17 before a Congressional Subcommittee that Minnesota had not been given a hearing in the compliance action because of this litigation: "In answer to your question about when the hearing [in the compliance action] will be, we've been stayed from actually planning the hearing because of subsequent litigation that the State initiated against the agency."[11] | On March 3, 2026, prior to the Deputy Administrator's statement, CMS *itself* had asked the Hearing Officer for an extension of the date to produce its administrative record and propose a case schedule, including a hearing date, which the Court approved.[12] Also, Deputy Administrator Brandt's letter to the State two days after her testimony says CMS will *ask* to stay the hearing in the compliance action, thus *admitting* this litigation did not stay the compliance matter.[13] |
| On working with the State on a CAP | On January 6, CMS told State officials it would provide assistance on the State's revised CAP: | At the March 10 meeting between DHS and CMS, CMS stated it had no information about the State's proposed CAP and that it |

[9] Deferral Press Conference, at 11:24, 12:19.

[10] ECF No. 22, at 29–30.

[11] House Committee on Energy and Commerce, *O&I Hearing: The Role of CMS in Combatting Medicare and Medicaid Fraud*, at 45:08 (YouTube, Mar. 17, 2026), https://www.youtube.com/watch?v=EiK_j01ena0.

[12] Second Declaration of Nate Brennaman, Exs. 1 & 2.

[13] ECF No. 32, at 4.

| | | |
|---|---|---|
| | "[Minnesota must] [m]eet with CMS to provide weekly updates on [the State's] progress in executing its action plan to address widespread fraud in the state. Representatives from the CMS Center for Program Integrity and/or Center for Medicaid and CHIP Services will participate and are ready to provide appropriate technical assistance."[14] | could not commit that it would ever provide Minnesota with feedback on the CAP. It also said it would meet less frequently with the State.[15] |
| On an extension request | Defendants' counsel at the March 24 phone conference claimed Defendants had requested an extension to respond to the deferral. | CMS now admits that DHS has not yet asked for an extension, but only that it *may* do so.[16] |

Minnesota cannot predict what position CMS will advance next, but it does know this: CMS has deferred a quarter-billion dollars and Minnesota does not understand what information it must provide to lift the deferral.[17] Defendants' brief does nothing to allay the State's concerns that this arbitrary and capricious deferral will continue indefinitely.

Indeed, CMS's supplemental brief is most notable for what it *does not* say. CMS Director Rory Howe is apparently knowledgeable about the deferral, yet his declaration

---

[14] ECF No. 5-1, at 8.

[15] ECF No. 25, ¶ 13.

[16] ECF No. 38-1, ¶ 9.

[17] What is also clear is that CMS has abandoned its compliance action—where it would have been required to prove the State's alleged substantial noncompliance with federal law, produce an administrative record, and be subject to discovery and cross-examination—in favor of the deferral process where it can withhold money without any scrutiny whatsoever, and apparently without any detailed explanation of why it is deferring federal funding.

provides no more information about the nature of CMS's concerns than was contained in the February 25, 2026, Notice of Deferral itself.  *See* ECF No. 38-1, ¶ 6.  The Supplemental Brief and Howe Declaration do not explain why $164 million continues to be withheld for a "variance" or what documents are needed to resolve the variance.  There is also no explanation of the "data analytics" performed by CMS that led to the withholding of $79 million, who the "specific providers" are for which there are concerns, or what "aberrant billing practices" are at issue.  Surely the best way for CMS to assure the Court that the deferral is "regular" would have been to provide an explanation; instead, CMS and Director Howe have explained nothing.

Accordingly, more than a month after the deferral—and only 27 days before Minnesota's 60-day deadline to produce documents—CMS still has not fully explained the nature of its concerns or confirmed all the information needed to alleviate those concerns.  Minnesota is collecting the sampling of data requested by CMS, but it has no assurance that these documents will satisfy CMS, or that these documents constitute *all* the information CMS will demand.  *See* 2d Hultman Decl., ¶ 3.  Notably, Director Howe is careful not to limit CMS's discretion to demand more documents or extend the process.  *See* ECF No. 38-1, ¶ 11 ("Once CMS determines that Minnesota has submitted the required documentation in a readily reviewable form, the agency would have 90 days . . . .").  Nor does he commit that the sample of 490 claims is all that will be requested.  *Id*.

In short, Defendant Oz said CMS's acceptance of the CAP would end the deferral.  Not only has that not occurred, but now more than a month after the deferral notice, Minnesota still does not understand all it needs to do to lift the deferral.  Defendants'

"subsequent facts" do not support denial of Minnesota's Motion for a Preliminary Injunction. Instead, what has occurred in the month since the deferral supports granting that Motion.

## CONCLUSION

Based on the foregoing and the reasons identified in Plaintiffs' prior arguments, Plaintiffs' Motion for a Preliminary Injunction should be granted.

Dated: April 2, 2026

KEITH ELLISON
Attorney General
State of Minnesota

**s/ Brandon Boese**
NATE BRENNAMAN
Assistant Attorney General
Atty. Reg. No. 0331776

SCOTT H. IKEDA
Assistant Attorney General
Atty. Reg. No. 0386771

BRANDON BOESE
Assistant Attorney General
Atty. Reg. No. 0396385

EMILY DOYLE
Assistant Attorney General
Atty. Reg. No. 0403550

445 Minnesota Street, Suite 600
St. Paul, Minnesota 55101-2125
(651) 757-1112 (Voice)
(651) 282-5832 (Fax)
Nate.Brennaman@ag.state.mn.us
scott.ikeda@ag.state.mn.us
brandon.boese@ag.state.mn.us
Emily.Doyle@ag.state.mn.us

*Attorneys For Plaintiffs*

|#6330611-v1