**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Minnesota et al.,

               Plaintiffs,                         Civil File No. 26-cv-1701-ECT-DTS

     v.

Dr. Mehmet Oz, et al.,

               Defendants.

**DEFENDANTS' RESPONSE TO MINNESOTA'S**
**SUPPLEMENTAL MEMORANDUM**

This Court directed the parties to address the effect of ongoing administrative developments. Minnesota's submission rests on a single, irrelevant point: Dr. Oz said publicly that Minnesota would get its money back after CMS accepted the Corrective Action Plan (CAP). CMS accepted the CAP but didn't release the money. Minnesota calls the deferral pretextual and arbitrary under *Department of Commerce v. New York*.

The CAP approval is irrelevant to the deferral. The CAP addresses prospective compliance. A deferral addresses retrospective allowability. Approval of the former does not resolve the latter. The deferral process proceeds in the normal course. CMS has issued documentation requests on 490 sample claims, and those requests remain pending with the State. ECF No. 38-1, Howe Decl. ¶¶ 10-11.

What Minnesota's submission does not and cannot explain is how any recent development overcomes the threshold legal issues in this case. Minnesota has not identified

the consummation of any decisionmaking process. It has not identified any right or obligation the deferral determined. What it has offered is narrative, speculation about motive, and persistent confusion between the CAP and the deferral. What it has not offered—in any submission, at any stage—is a viable legal theory of finality.

**RESPONSE**

Minnesota's supplemental filing raises arguments about pretext, Dr. Oz's public statements, and alternative relief. Defendants respond to those arguments below.

## I.    Minnesota Conflates the CAP with the Deferral.

The Supreme Court in *Bowen v. Massachusetts*, 487 U.S. 879, 885 (1988), recognized that the Medicaid statute provides two distinct mechanisms for addressing state expenditure issues. Each has its own statutory authority, its own procedures, and its own avenue for judicial review.

The first process is a prospective compliance action under 42 U.S.C. § 1316(a), which permits CMS to withhold future funds when a state fails to comply substantially with federal requirements. This is where the CAP fits in. A CAP addresses prospective compliance. It asks whether Minnesota's systems are adequate going forward.

The second process—at issue in this case—is a retrospective disallowance process under 42 U.S.C. § 1316(e), which permits CMS to question and ultimately deny, if appropriate, reimbursement for specific past expenditures. This is where the deferral fits in. A deferral under 42 C.F.R. § 430.40 is a preliminary step in the disallowance process. The deferral addresses retrospective allowability of certain claims. It asks whether certain past claims reported on the CMS-64 are documentarily supported.

2

Minnesota's central argument is that Dr. Oz promised to release the deferred funds once CMS accepted the CAP and that CMS's failure to do so reveals the deferral to be pretextual. The argument depends on treating the CAP and the deferral as a single proceeding. But they are not. They are different questions governed by different regulatory provisions imposing different burdens and providing different procedural protections. *See* ECF No. 22 at 5-6 (discussion of statutes and regulations). On the prospective side, to address the compliance action, CMS approved the CAP.[1] The retrospective question, addressed by the deferral (and possible future disallowances), remains outstanding. Minnesota has not established the allowability of the deferred claims. The deferral persists not because CMS is moving the goalposts but because the questions the deferral asks have not been answered, and it's Minnesota's obligation to do so.

Approving a forward-looking CAP does not establish that past claims were allowable any more than installing a new security system establishes that nothing was stolen. The two inquiries may be related but are distinct.

## II.    Dr. Oz's Statements Do Not Create Reviewable Agency Action, and *Department of Commerce* Does Not Apply

Minnesota emphasizes that Dr. Oz is the Administrator and the final decisionmaker under 42 C.F.R. § 430.40(e)(1). True, but irrelevant. The Administrator has not made a decision. Section 430.40(e)(1) authorizes the Administrator to give "*written* notice of his

---

[1]    Minnesota characterizes seven weeks as unreasonable delay. CMS reviewed a comprehensive corrective action plan spanning 14 service areas. That timeline is brisk, not dilatory. Regardless, CMS approved it. That result is now what counts.

or her decision to pay or disallow a deferred claim." No such notice has been given. A press conference is not a written notice under § 430.40(e)(1).

Minnesota would treat Dr. Oz's public statements as evidence of pretext, invoking *Department of Commerce v. New York*, 588 U.S. 752 (2019). The analogy fails at the threshold. *Commerce* involved a final agency action with a completed administrative record that revealed a different motivation. Here, there is no final action. CMS is in the middle of reviewing sample claims and awaiting documentation. No determination on allowability has been made. *Commerce* tells courts, in extraordinary cases, to examine agency reasoning after an agency has finished reasoning and only with a strong showing of bad faith in the record. Here, Minnesota asks this Court to grade the homework before it has been turned in.

Under *SEC v. Chenery Corp.*, 318 U.S. 80, 87 (1943), an agency action must be evaluated on the basis the agency itself articulated. The deferral notice states that basis: significant expenditure variances totaling approximately $165 million and Fraud Prevention System-flagged claims totaling approximately $79.5 million. CMS requested documentation on 490 sample claims. *See* ECF No. 5-1, Ex. 6 ("Per 42 C.F.R. §430.40, your office is requested to provide, within 60 days from receipt of this letter, all documents and materials that it believes support the allowability of the above claims that have not already been received by CMS."). It has held ten meetings with the State. The Howe Declaration establishes the process is proceeding in the normal course and is consistent with CMS's historical practice. Howe Decl. ¶¶ 11–13. *See also* ECF No. 5-1, Ex. 6 (notice identifying claim related to "fourteen high-risk Medicaid service areas identified as

4

particularly vulnerable to fraud or abuse."). Minnesota has conceded the validity of the stated basis. That is what the Court reviews.

Minnesota's pretext theory reduces to this: because the Administrator made a public statement about the CAP, nothing CMS says can be credited. But *Commerce* does not hold that a single public statement renders all subsequent agency action pretextual. It holds that an agency's stated rationale must be genuine when measured against the administrative record. CMS's stated rationale is genuine. CMS has acted on it. *See* ECF No. 25-1, 25-2 (instructions on transmitting documents to substantiate allowability of claims in high-risk areas). Minnesota's dissatisfaction with a process the governing statute and regulations expressly contemplate does not make it pretextual. And the burden remains on the State to substantiate its claims. 42 C.F.R. § 430.40(b)(2).

**III.     Minnesota's Alternative Relief Request Proves the Deferral Is Not Final.**

If its primary argument fails, Minnesota asks the Court to require CMS to "articulate a clear, unambiguous, reasonable, and discrete list of documents" the State must produce to resolve the deferral. ECF No. 36 at 7-9. This new request is remarkable for what it concedes.

If the deferral process is ongoing and the State is asking the Court to manage it, then the deferral is not final agency action. Minnesota cannot simultaneously argue that the deferral is a completed, reviewable agency action and that the Court needs to intervene to structure the ongoing process. Minnesota's concession is clear: it asks this Court to manage a process, not review a final decision. That is not a justiciable controversy.

5

The State seems to want the Court to dictate the terms of CMS's document requests, set the parameters of the review, and structure the timeline. But Article III courts resolve cases and controversies. They do not manage agency audits. *See Abbott Labs. v. Gardner*, 387 U.S. 136, 148-49 (1967) (discussing ripeness and "protect[ing] [ ] agencies from judicial interference until an administrative decision has been formalized"). In APA cases, a court "sits as an appellate tribunal" resolving only legal questions. *County of Los Angeles v. Shalala*, 192 F.3d 1005, 1011 (D.C. Cir. 1999). "It is improper for courts to "retain jurisdiction to devise a specific remedy to follow[.]" *Id.*

In any event, CMS has requested detailed documentation on 490 specific claims—330 fee-for-service and 160 managed care encounters. The process has built-in timelines: the State has 60 days (and can seek an extension) to provide documentation; CMS has 90 days to determine allowability; and if CMS cannot meet that deadline, it must release the funds. 42 C.F.R. § 430.40(c)(5), (6).

Minnesota's supplemental submission does not alter the finality analysis. The approval of the CAP in a separate administrative proceeding does not transform the deferral into final agency action. Minnesota's own filing confirms as much. It asks the Court to supervise an ongoing process. It describes iterative exchanges. It complains the process is unclear and open-ended. It characterizes CMS's document requests as evolving. Each of these describes a process that has not reached a final decision.

Indeed, this last-minute alternative relief request reveals another threshold bar: subject-matter jurisdiction. 42 U.S.C. § 1316(e) channels judicial review of disallowances through a specific statutory scheme that precludes district court jurisdiction. Unlike other

threshold arguments, preclusion is a question of subject matter jurisdiction under *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200 (1994). In *Great Plains Cooperative v. CFTC*, 205 F.3d 353, 355 (8th Cir. 2000), the Eighth Circuit applies this principle directly, dismissing for lack of subject matter jurisdiction, holding that the suit was "an impermissible attempt to make an 'end run' around the statutory scheme." *Id.*

So too here. Minnesota has not traversed any step of the statutory process. The statutory predicate for the relief Minnesota seeks—a final determination on allowability—does not exist. Minnesota wants the Court to manage an administrative process that Congress delegated to CMS.

Defendants intend to develop this argument further in a forthcoming motion to dismiss. Should the Court wish to consider the jurisdictional question in connection with the preliminary injunction motion, however, Defendants can brief it on whatever schedule the Court directs. *See Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 94–95 (1998) (threshold questions of Article III and statutory jurisdiction should be resolved before reaching the merits).

## IV.   The Balance of Harms Argument Fails.

The deferral involves retrospective allowability. That CMS seeks to pause the prospective administrative proceeding says little about the retrospective one. Releasing hundreds of millions in claims whose allowability has not been established would cause concrete harm to the Treasury and would eliminate the mechanism created to ensure states document the allowability of their claims before receiving payment. The State has the

7

burden to establish allowability before payment. 42 C.F.R. § 430.40(b)(2). Minnesota asks this Court to reverse that burden.

## CONCLUSION

Minnesota's supplemental brief does not establish that the deferral is final agency action, that Dr. Oz's public statements constitute binding agency commitments, or that CMS acted pretextually. Minnesota's alternative request—that the Court step in to manage the deferral process by dictating what documents CMS must accept—admits that the process is ongoing, and no final determination has been made.

That's not a basis for injunctive relief. It's a basis for dismissal.

Dated: April 2, 2026

MICHAEL B. STUART
General Counsel

ELIZABETH C. KELLEY
Deputy General Counsel
Chief Legal Officer for CMS

BETSY M. PELOVITZ
Associate General Counsel

JOCELYN S. BEER
Acting Deputy Associate General
Counsel for Litigation
U.S. Department of Health and Human
Services

*Counsel for Defendants*

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

MICHELLE R. BENNETT
Assistant Director
Federal Programs Branch

CHARLES E.T. ROBERTS
Counsel to the Assistant Attorney
General Civil Division

DANIEL N. ROSEN
United States Attorney

Respectfully submitted,

*/s/ Matthew C. Zorn*

MATTHEW C. ZORN
Deputy General Counsel, U.S.
Department of Health and
Human Services and Special
Assistant U.S. Attorney for the
District of Minnesota

*Attorneys for Defendants*

9

## CERTIFICATE OF SERVICE

I hereby certify that on April 2, 2026, I electronically filed the foregoing Response to Plaintiffs' Supplemental Memorandum with the Clerk of Court using the CM/ECF system, which will notify all counsel of record.

*/s/ Matthew C. Zorn*

MATTHEW C. ZORN

## CERTIFICATE OF WORD COUNT

I hereby certify that this filing is 1,856 words using MS Word.

*/s/ Matthew C. Zorn*

MATTHEW C. ZORN